Good morning, counsel. We will be hearing one piece today, and that is Khan v. Attorney General No. 19-1427, and we will begin with you, Mr. Mark. Thank you, Judge. I would like to reserve three minutes of rebuttal time. Granted. Thank you. Your Honor, immigration law has established four grounds for reviewing vacated convictions. This Court has acknowledged in Peno that there could be grounds outside of those four acknowledged under immigration law. And so we have to begin by asking whether a conviction expunged because it was decriminalized fits into any one of those four categories established by precedent. Counsel, can I just ask you to stop for one second? Could you begin by pointing me a little bit to where specifically in the text of the INA the exception or perhaps better stated standard that you're looking for Mr. Khan to benefit from appears? I cannot, Judge. There's nothing in the INA about how to deal with vacated convictions. All of the case, all of the law on vacated convictions comes from case law. It's circuit law or BIA decisions. The seminal case is, of course, Pickering out of the BIA from within the BIA, but within the Third Circuit, Peno is the seminal case and subsequent cases also affirming that the Peno standard is the proper standard. Counsel, in terms of the text that we're looking at here for the stop time rule, why are we talking about convictions at all? Where is there any authority for applying Peno or Pickering to the stop time rule, which uses the term committed, not conviction? And among other things, Barton v. Barr seemed to put a spotlight on that particular language and significance of Congress's use of the term commission. Well, Judge, if using the word commission without referring, the commission is the date of the offense, which is different than obviously the date of conviction. But to say that we were going to stop time whenever there's a commission of a potentially criminal event would be way too broad, way unenforceable and unprovable in any circumstance to just say that the commission of a behavior that could be criminal could stop time. Why is that so? Didn't we already cross that bridge in Doe where we were addressing the parole statute and the term commission there, and we looked at the conduct and applied a standard of probable cause as to whether that conduct occurred? Judge, I'm sorry, I'm not familiar with Doe in the parole context that Your Honor is referring to, but within immigration law to say that an allegation that somebody possessed marijuana or an allegation that someone shoplifted or any other event that didn't lead to a conviction would be enough to stop time would lead to DHS presenting all kinds of evidence in removal hearings and having not even many criminal trials, but full-blown criminal trials to determine whether these events happened or not in order to stop time. Counselor, can I just pick up on that point for a moment because I want to echo what Judge Krause is asking. As I read section 1229B, it says commission, not a conviction, but it more importantly says a commission of an act that renders an alien inadmissible under 1182. 1182 then has three standards, a conviction, an admission to having committed the act, or an admission to having committed the essential elements of the act. So it's not quite as standardless, I think, as you're suggesting, and so how is it that we should apply that language to address Mr. Kahn's petition? Again, Judge, the problem would be what constitutes an admission or where DHS would be relying on hearsay police reports or hearsay comments of witnesses that are uncorroborated, unproven, unadmitted by the defendant. In other words, the levels of hearsay would be impossible to overcome or impossible to even present in court. Obviously, in immigration court, the rules of evidence are not as strict, but... Well, isn't the point that if, in this situation, the underlying conviction was defective, let's say there was ineffective assistance of counsel, there's no doubt, even though something was committed, the conduct was committed, we would still say that it shouldn't be counted because there was a defect in the underlying conviction. Would you not agree that that's the case, that even though there was something committed, if later on it was determined that it was defective proceedings, then it wouldn't stop for purposes of the stop time rule. But here you have a situation where you're not even alleging that there was a defect. You are urging that the court should determine the reasons for the vacator. You say that in your brief, but don't you have a burden to show us that the underlying proceedings were defective? And you haven't even speculated as to how they may have been defective, have you? No, Judge, I would prefer not to speculate on this. I think your initial point, Judge, is exactly our point as well, that if there is no conviction, then the date of the commission can't exist. There has to be a conviction to trigger the stop time rule, and the date of commission is what determines the date that the time stops. As far as the conviction itself, Judge, it brings me back to where I was beginning, which is that if the vacator is for substantive reasons, then the conviction no longer exists under immigration law. Okay, but what have you proffered as to what kind of substantive reasons could there be in your petition? You rely upon the statutory provision that allows for the destruction of the record. You don't offer any other basis for the vacator, do you? And in Pinho, we said you look at the order. Well, the order doesn't say anything here. And then we look at the record, and the record is your petition. How have you averred anything that would give rise to a basis for saying that there was a defect? Judge, I think that the decriminalization in and of itself is considered substantive. And I would point the court to United States Supreme Court precedent, not in this issue, but on where the Supreme Court has reviewed collateral attacks on criminal convictions through habeas proceedings. For instance, in Teague v. Lane, where the court has pointed and said that new rules, where the court is evaluating whether new rules should be applied also actively for the purpose of habeas and for collateral attacks. I've heard Teague proffer it in a lot of situations, but I haven't seen nothing in your briefing. I mean, are we really going there? I think I am. Well, I definitely am, Judge. It's not briefed, and I came across the line of cases in preparing for argument. But I think it's actually a case that cites Teague. It's Shriro v. Summerlin, which is 542 U.S. 348, where it says a rule is substantive if it alters the range of conduct or the class of persons that the law punishes. Exactly decriminalization. Isn't the distinction between a defect in the actual proceeding that gave rise to that specific conviction versus post-conviction events like a decriminalization by a state legislature? No, Judge. I think they're two different classes. This is where I came back at the beginning, which is that decriminalization, whether it's by legislature or by court decision, doesn't fit squarely into procedural or substantive as immigration case law has defined them. Was this conduct a crime at the time it was committed? It was a crime at the time it was committed under Connecticut law, but Connecticut has now said that we don't think it should have been a crime at that point. At that time, what is the defect? In terms of the historical fact of the conviction, what is the defect in that conviction? The defect is the law itself, that the Connecticut legislature said this was a bad law. It should not have been criminal, much like the Supreme Court has vacated sodomy as a criminal act. That's unconstitutional. There was a declaration of unconstitutionality. That is the same as, for instance, ineffective assistance of counsel. To say that something was unconstitutional undermines the entire proceeding from a substantive standpoint. There's been no allegation that this marijuana crime was somehow unconstitutional. You can't draw those two together. They're apples and oranges. We get back to Judge Krause's question of, was there a procedural or substantive defect? It would seem to me it's up to you to convince us that there was something basically wrong with the conviction at the time of the conviction. Judge, that raises two points. One is, where does the burden of proof lie? I would point the court towards the Sixth Circuit in Pickering v. Gonzalez, which is the PFR that follows the Pickering case in the BIA, where the Sixth Circuit reversed Pickering and found that it was the government's burden. Essentially, they established a burden shifting, essentially saying that once the DHS has proven that there is a conviction, the burden shifts to the respondent to establish that the conviction was vacated. Once the respondent establishes that the conviction was vacated, the burden shifts back to the government to show that it was for a rehabilitative purpose. In this situation, the burden shifting is important because at this point, the BIA, and in Your Honor's question, is placing the burden on the respondent, where the Sixth Circuit, and I would assert correctly, has put the burden on the government to say that this was rehabilitative. When you talk about rehabilitative, you're really misreading what Pickering said. Pickering said there's a dichotomy. Was it defective or a post-conviction event, such as for rehabilitative or immigration hardship? The comparators are, was it defective or was it a post-conviction event? Here, it's pretty easy for the government to point to the statute and say, it's clearly a post-conviction event here, so that I don't think the burden is all that heavy. You seize on the rehabilitative, but that's not what was said in Pickering. Pickering said a post-conviction event, such as immigration hardship, rehabilitation, or a change in state policy, that's the same type of post-conviction event. So I don't think the burden is all that heavy to show rehabilitative. That's not what Pickering said. Judge, I think that Pickering put the burden on the respondent, and that by doing so, it has shifted it wrongly, because if we look at- But they have shown, the government here has shown that there was a post-conviction event, and that was the change, Connecticut's change in its policy. Well, Judge, there is a change in the policy, but the petition, if we're looking at the PINO allowable documents, which are the Connecticut order for expungement, which says nothing in any direction, and the petition for expungement, which cites two possible reasons. It cites due process, and it cites the expungement statute. And those are the only allowable records. So if we're looking at- The petition mentions due process, but in the animating provisions that ask for the relief, it's clearly relying on the Connecticut statute. What due process violation is set forth, is alleged in the petition? Judge, there's nothing alleged in the petition itself, other than referring to due process. But this is why I believe the burden shifting is so important, is that if the government is required to prove that the vacator is non- If the vacator is rehabilitative or immigration-based or outside of substantive grounds, they cannot do that, because there's nothing in the record, nothing in the allowable record, that allows that to happen. Will you tell me where in Pickering it says that the only other possibility, other than defective, is rehabilitation or immigration hardship? It doesn't, Judge. No, it doesn't. Pickering uses- Because of post-conviction events, such as rehabilitation or immigration, or they could have said, or Connecticut change in policy, state change in policy, could they not? No, I don't think they could, because I think that decriminalization is different than a change in policy. Decriminalization is substantive. It is the most substantive change that can exist. It is taking something that was criminal and making it non-criminal. For instance, the distinction the court is, of course, aware of, and DHS has said it's a Prado out of the Ninth Circuit, where the policy was, they changed the penalties and the classification from felony to misdemeanor. That's a change in policy. That's not a decriminalization. And there's a- Yes, it is. That's what the court in Mendito said. It is a decriminalization. Yes. In Connecticut, it was a decriminalization. And to me, decriminalization, and as the Supreme Court has pointed out in the habeas line of cases, decriminalization is substantive. Counsel, isn't, going back to the text of the statute, if we're looking at the commission of an offense that is set out in 1182A2, why isn't our focus on the validity of the offense? So that things like void for vagueness, if there really was a problem with the offense itself, then it would be substantive. But otherwise, doesn't our focus need to be on the commission of, if the offense was not otherwise undermined in its validity in terms of its constitutionality, then why don't we have here what's clearly a commission of an offense? Judge, again, I think- That is void for vagueness. I mean, this appears to be a policy decision to decriminalize an act that could be criminalized should legislature choose to do that, which it previously did. It previously did, and then corrected its error by saying this is not behavior that we think is criminal or ever should have been criminal, and therefore it is decriminalized with retroactive effect. Counsel, we've gone a bit over 15. If my colleagues have a further question at this point, I invite them. Otherwise, we'll return to you for rebuttal. Nothing. Okay. Ms. Lee. Good morning, Your Honors. May it please the Court, Senator Lee representing the Attorney General. Judge Krause, like you said, in this case, the commission of the crime was all that was necessary to stop accruing time for cancellation of removal. Counsel, help us with that. Because here, the IJ, the BIA, both parties have addressed this issue with the assumption that PINO and Pickering are applicable to our analysis in the stop time. Granted, there may be some overlap in thinking about the validity of an offense and what might constitute a substantive problem with the offense imposing criminal sanctions. But why should we just assume that Pickering applies when the language here is about commission of an offense, not about conviction, per se? Well, Your Honor, I think either way, if you go by the commission of the crime or if you go by the conviction, if you look at either way, the petitioner is still ineligible for cancellation of removal. But would you not agree that if there was a defect in the underlying proceeding here, that it wouldn't count for purposes of the stop time rule? Now, the stop time rule says it would be as of that date that the stop time rule, the commission relates to the timing of when the stop comes, the period ends at the commission. But the other shoe has to drop. The conviction has to have been, I mean, there has to have been a conviction that results from it, and the conviction has to have been substantively valid. Isn't that correct? Well, under 1182, I believe that to render someone inadmissible, he had to have committed the act or admitted to committing the act or been convicted. And in this case, the petitioner has never argued that he never committed the act. He agreed that he was convicted, and now he's arguing that the conviction is no longer valid. So he has admitted that he committed those acts of possessing marijuana. And at the time, as you say, at the time of the commission of that offense, he was rendered ineligible for cancellation of removal. And in this case, there is no substantive defect in the underlying criminal proceeding. OK, so the stop time rule here would say that the period ends when he did commit this offense, correct? Yes, Your Honor. That's the purpose of that provision as of the date of the commission. But if there had been an underlying defect in the conviction here, let's say he did not have counsel, then we would say, regardless of the fact that he might have committed it, as long as he didn't admit it, let's say he didn't plead guilty, he fought it, then we wouldn't count that as rendering him ineligible, would we? If there was a defect in the conviction? I didn't think I'm asking anything that's all that hard. Well, if there's a defect in the conviction, he would no longer have the conviction, but he would still have admitted to committing those acts that rendered him inadmissible. Did he plead guilty here? He did plead guilty, Your Honor. All right, so does that move the entire case? I believe so. Is this in your brief? I didn't see this in your brief, that because he admitted it, that the question of the conviction is irrelevant. No, that was not in our brief, Your Honor. So we will go forward with our argument that relying on the conviction in this case, he is still ineligible for cancellation of removal because he failed to show that... We're not in the business of giving out advisory opinions. And given the language of the statute, and as you're now arguing that his admission to the offense is an independent basis for denying relief here, what do we do with the fact that the IJ and the BIA also proceeded on the assumption that we were looking at a question of hickering as applied to convictions? And we can only affirm the agency on the basis of the rationale that it used under Chenery and Ventura. So what would we do in that circumstance? Well, Your Honor, I believe that the agency's decision should be upheld because their reasoning... Excuse me? On what ground? Because whether he is considered convicted based on the agency's decision, they did say that he was convicted, and based on that conviction, he is not eligible for cancellation of removal. And that reasoning is correct, Your Honor. It was petitioner's burden to show that there was a defect in his underlying criminal proceedings, and he failed to meet that burden. So, as his counsel has argued, there's... He tried to argue there is no... Possession of marijuana has never been deemed to be unconstitutional conviction. In this case, the Connecticut legislature determined as a policy basis to decriminalize it, but there is no suggestion that a conviction based on possessing marijuana is unconstitutional. And there's nothing... Yeah, I'm sorry to interrupt. If I could just ask a question on that point. Is it the government's position that Mr. Khan is no longer convicted of the offense under Connecticut law? Because as I read the Connecticut statute, it did two things. First, it prospectively changed the criminal penalty to a civil penalty, and it also allowed for individuals who had previously been convicted of this offense criminally to petition for destruction of their record. Do either of those things remove the criminal conviction that Mr. Khan was subjected to at the time of his conviction? Well, for immigration purposes, it does not remove the conviction. So, his underlying proceedings were... I'm sorry, what do you mean by for immigration purposes, just so I understand? Under the definition of conviction in the Immigration Act, section 101A48A, his conviction still stands. And for state purposes, it's been erased, but for purposes of applying for cancellation of removal, he is still convicted. But isn't that the court before us? We can't simply assume that. I think Judge Meade's question is going to... When we look at what's essentially expungement, is there a distinction in the way that we as federal courts have treated a vacateur versus a expungement or destruction of records? And if there's not, then are we back to the extent we're looking at the validity of the conviction, applying Peno and Pickering? Well, I'm not sure... If I misunderstood Judge Meade, please correct me. You did not, Judge. You did not, Judge Krause. I think it would help if you could focus on those two steps in question. Is there a difference between the destruction of records or expungement and vacateur? And if not, then are we simply talking about Peno or Pickering if we accept that the conviction is the relevant focus here? Well, Your Honor, I think in this case, the board didn't decide whether the destruction of a record is the same as a vacateur. Is that the question? It seems as though there was an assumption that there was a vacateur or that the destruction of the record was similar in effect to a vacateur. Well, isn't that because in Peno, we've essentially acknowledged and observed that the terms expungement and vacateur are used interchangeably? I don't recall that part of Peno, but I could research that and submit a letter to the court on that issue. I doubt that's necessary. I'll take a look at the opinion as needed. But are you now arguing that there is a difference between expungement and vacateur? And if so, what's your authority for that? No, I'm not arguing that right now. I was trying to discern whether that was your question. But it sounds as though you were not asking about whether there was a difference between the destruction of a record and a vacateur. I was confused about your question. Well, Your Honors, as I've said, it was Mr. Kahn's burden in this case to show that he was eligible for cancellation of removal. He failed to meet that burden here because the order and the petition in the record that he submitted to the state court did not show that there was any underlying defect in his criminal proceedings. What about your colleague's view that you have to show a rehabilitative purpose here, that you have a burden to show rehabilitative purpose, and you failed to do that? It was not the government's burden to show rehabilitation here. It was the petitioner's burden to show that he's eligible for relief by showing whether there was any substantive or procedural defect in his criminal proceedings. And he failed to do that here. We're a federal or we're a state court to determine that there was a defect in a conviction such that it needed to be vacated. I assume you'd agree that would be something that was viewed as a substantive or procedural defect. If the state court found that there was a defect? Yes. In the proceedings? I believe so, Your Honor. Why should we give less deference to a state legislature? If the state legislature is making the determination that something should never have been criminal, why don't federalism concerns mandate that we give the same deference to that and treat it as a vacateur based on a substantive defect? Well, in this case, there's been no showing that the legislature determined that this offense should never have been criminal. It seems that over time, the views have changed. And so based on that, they're now saying that this person does not deserve a criminal record and associated penalties based on this offense. But the statute could have been only prospective. Instead, it allows for expungement as well. Doesn't that reflect the legislature's determination that this particular conduct should never have been criminal? No, Your Honor. I believe that in a sense, allowing someone to erase their record of this conviction is rehabilitative in nature by allowing that person to go forward with no criminal record. And that would help with applying for jobs, things of that nature. And so in a sense, it's somewhat rehabilitative. But there was never any proof in this case that the Connecticut legislature determined that this crime was unconstitutional or that there was any sort of defect. Well, we're limited under Peno to looking at the order and the petition to the extent the order by its terms doesn't answer our inquiry. And the petition does cite to due process and to the federal as well as state constitutions. Why isn't that sufficient, at least to shift the burden to the government to show that the vacateur here was not based on a determination that criminalizing the conduct was unconstitutional? Because the petition just mentioned the Constitution, but when you actually look at the language of why they wanted the record destroyed, they relied on the decriminalization policy in Connecticut. So the argument was actually based on just the fact that Connecticut decriminalized that offense. But there was no real substantive constitutional argument. They just threw it in the petition at the beginning and provided no arguments about whether the statute was unconstitutional or not. Counsel, we've also allowed you to exceed your time by a couple of minutes. If my colleagues have other questions, again, we will extend time as needed. Otherwise, we'll return to rebuttal. Judge Mabee, Judge Rendell? Nothing further. Thank you, Ms. Lee. Mr. Mark? You've got three minutes. Thank you, Judge. The first point I'd like to make, Judge, is the distinction between the commission of an event and a conviction. The reason your Honor's question is important is that without a conviction, the person is not inadmissible. So it doesn't trigger the stop-time rule. While the stop-time rule refers to date of commission as the date of stopping, if there is no conviction, the stop-time rule is not triggered because the person is neither removable nor inadmissible. Would you comment on the plea, the guilty plea, whether the fact that he pled guilty and admitted the crime removes the need to even address the conviction? Judge, the plea would be the admission, but without the conviction, the plea goes away because he's still not inadmissible. It might be something that could be considered as to discretion and whether the respondent partakes in drugs casually or to some severe level, but as far as making him inadmissible under the INA, without a conviction, he's not inadmissible. All right. So the admission of criminal conduct alone will not make him ineligible. There needs to have been a conviction, correct? That is correct, Judge. Because I point out, in Pinho, it was also a guilty plea, and we addressed the conviction aspect. Right, Judge. I agree wholeheartedly that without a conviction, the respondent remains admissible to the United States and the stop-time rule is not triggered. The only thing that becomes conviction is after a conviction, the question becomes when does the stop-time rule apply, and that is the date of commission. Commission, yes. Correct. That was the first point. The other point I want to address, Judge, is the questions regarding whether Connecticut has referenced the constitutionality of the marijuana possession, and I would assert that's the wrong question. There's nothing in Pickering or Pinho that refers to only constitutional changes being sufficient for a vacator to no longer count as a conviction under immigration law. The standard set forth in Pickering and Pinho is substantive change, not constitutional change. That very clearly means that changes that don't rise to the level of constitutional change but that are still substantive are sufficient to vacate a conviction. We didn't say substantive change. It's procedural or substantive defect in the proceedings. Right. What was the procedural or substantive defect in the criminal proceeding relating to the conviction that you're averring should no longer render him ineligible? What was the substantive defect? The substantive defect is that the Connecticut legislature believes that that behavior should not be criminal and that he was convicted for an act that is not subject, should not be subject to criminal. But don't we need to look at the criminal proceeding at the time and say what occurred, and is this substantially or procedurally defective? You have not stated any possibility of anything that was substantively or procedurally defective in the conviction that was rendered at the time, have you? Within the court proceedings itself, Judge, no, we're not asserting that. What we're asserting is the fact that he was in court in the beginning, in the first place, is substantively defective because the behavior that dragged him into court should not have been criminally enforced and should not have been criminal. And if we operate from that perspective, then that is the substantive failure. That then renders us under all of the case law that's relevant here, what the BIA has been relying upon, what Pinho and Pickering, that says, oh, well, then we really don't need to look at the underlying. If a state later changes its mind, then that's enough to take it out of it being, rendering him ineligible, but that's not the law. What authority do you have for the proposition that the later vacating, which is a change in state law as to the nature of the conviction, that that really is a substantive defect in the proceeding? I don't see that reasoning anywhere. Judge, I think that Your Honor made a leap from a decriminalization by a state legislature that does, in the legislation, make it retroactive, thereby stating that this is a substantive change to any change by a state legislature. There are other reasons and other grounds that a state legislature could alter a law or alter the enforcement of a law. I would argue that. Where is retroactivity implicated here? Well, the retroactivity is the destruction of the records, the vacating of the convictions and the destruction of the records for anybody who has been convicted of this offense, regardless of whether they had performed well or even completed their sentence. For instance, Mendito, the case that specifically addressed this and is cited in the briefing, Mendito himself had two convictions and was presently on a violation of probation at the time that he petitioned to vacate his records and erase them. And the court said that because it was decriminalized, it's all subject to erasure. His actual behavior, whether or not he completed his sentence, whether or not he had done any rehabilitation, was irrelevant. He was actively in a violation of probation at the time, and the court said, well, this is no longer criminal, and so your previous offenses are erased. That change, Judge, and again, I direct the court to the language in the line of cases regarding retroactivity and habeas cases, where a court or legislature changes the conduct or the class of person to which the law applies, that is a substantive change. Those are the words in that line of cases in a different context, but it is the same language that we're referring to here. We're talking about changes in law and whether or not that is substantive. There's no reason to distinguish. So if a change is substantive under habeas law and retroactivity, it is substantive also under immigration law and vacators. Counsel, just a quick question on that point. Congress could have said what you're arguing in the INA, right? And it has said similar things elsewhere. In 921A20, for instance, which was added at the same time that the definition of conviction was added to the INA, Congress carved out a whole series of acts that would render a conviction invalid for purposes of the felon and possession statute. So it knows how to do what it is that you're asking for. It has not done so here. Isn't that pretty strong evidence that we shouldn't be reading a whole bunch of meaning into the limited language that we have? No, Judge, because we can't. Because there was no provision in the INA for what to do with vacated, expunged convictions. And the fact that those exist has demanded of the courts, the immigration courts and the federal courts, to address the issue and create a body of law that guides us here. It would have been ideal had Congress put in provisions for each and every way that a conviction could be vacated. But in the absence of that, it fell upon the courts, the Board of Immigration Appeals and the circuit courts to parse those issues out. So I agree with Your Honor that we're in a less than ideal situation presented to us by Congress, but that their failure to define these issues doesn't prevent this court from acting on it. It actually requires this court to act on it because there is no alternative. And we can't just ignore the facts that this person and many respondents have convictions that were vacated. Counsel, we've exceeded time, but I have one further question for you in some of your responses to Judge Rendell's questions about the requirement of a conviction here rather than conduct that would be sufficient by some standard to establish the elements of the offense. In particular, we've interpreted in Doe the parole statute, which uses very similar language, to allow for a conclusion as to the commission of an offense based on conduct without a conviction, if there was probable cause on the record, to establish that the elements were committed. What distinguishes that interpretation of the parole statute from how we should go about interpreting the time bomb? Judge, there's one glaring difference between interpreting parole statutes and immigration statutes. A person on parole has limited rights. Parole is an alternative to prison. They're subject to parole supervision, and the burdens of proof are much reduced because of their stature as on parole. Counsel, just to clarify, in Doe, we were dealing with a situation where a permanent resident who was returning to the United States was deemed. The other parole. Were they then requested admission such that the government could parole them for purposes of prosecution? Again, Judge, parole is a discretionary grant for somebody outside the United States seeking to enter under the terms of art of admission that we have. That's very different than this situation for a permanent resident who is in the United States and has all of the rights that come with that. In other words, we're not dealing here. Parole is discretionary. Parole is discretionary. It is up to DHS at the border to determine whether they should admit someone or not. And the grounds for granting that are wide latitude. They could deny entry for any various number of reasons that have nothing to do with convictions or drugs or anything. Here, we have a very limited circumstance of a permanent resident who is entitled to due process, a permanent resident who, because he's a permanent resident, the burden is on the government to establish his removability. And so we're dealing with two very different contexts. We've, again, been generous with time. Do either of my colleagues have further questions? Yeah. I'll think further. All right. And we thank both counsel for arguing today and we will take the case for advisement. Thank you.